[No. D016250. Fourth Dist., Div. One. Sept. 29, 1993.]

JOHN ELLIS, Plaintiff and Appellant, v.
McKINNON BROADCASTING CO., Defendant and Respondent.

## COUNSEL

James J. Warner for Plaintiff and Appellant.

Seltzer, Caplan, Wilkins & McMahon, Paul S. Metsch and Susan K. Milliken for Defendant and Respondent.

## OPINION

**WIENER, Acting P. J.**—Television station KUSI owned by defendant McKinnon Broadcasting Co. (KUSI) employed plaintiff John Ellis as an advertising salesman. Ellis's written employment contract contained a forfeiture provision which purported to deny him commissions on advertising he sold if the station had not received payment for the advertising before Ellis terminated his employment. After Ellis successfully brought the matter before the Labor Commission which found in his favor and awarded damages, KUSI obtained a trial de novo in the superior court. (Lab. Code, § 98.2, subd. (a).) The court decided otherwise, finding in favor of the station. Ellis appeals contending the trial court erred in its interpretation of the contract. He maintains the contract is ambiguous and the ambiguity should be resolved against the drafting party. Ellis also claims the forfeiture provision is unconscionable and should not be enforced. We decide the contract is unambiguous, but the challenged forfeiture provision is unconscionable and unenforceable. Accordingly, we reverse with directions to the trial court to enter judgment in favor of Ellis.

### FACTUAL AND PROCEDURAL BACKGROUND

KUSI operates a television station in San Diego. In December 1986 KUSI hired Ellis as an advertising account executive. Ellis's job primarily involved soliciting new clients to advertise on the station. Ten to 15 percent of his work involved postsales servicing of his accounts.

Ellis began working at KUSI under an oral employment agreement. The terms of the agreement included his job responsibilities, the starting date, the commission rate of 20 percent, the monthly draw of $2,166, and a provision KUSI would pay Ellis a draw against commissions based upon collections

received by KUSI. KUSI also guaranteed Ellis a salary of $2,166 for the first three months regardless of the amount of advertising he sold. Ellis was not aware KUSI would later require him to sign a written employment contract.

Approximately two weeks after he began working, KUSI presented Ellis with a written employment contract. KUSI's sales manager told Ellis the written contract was a formality which all employees signed. Ellis scanned the document for his 20 percent commission and $2,166 draw but did not examine it closely. He signed the contract without raising any objection or attempting to modify it. A provision at the end of the contract specified the written agreement "supersede[d] any prior agreements between the Station and Employee . . . ." In June 1987 KUSI presented Ellis with another virtually identical contract.[1] Again, Ellis scanned the document for his commission rate and draw and signed the contract.

Both written contracts provided for Ellis's employment "at will" terminable by either party on two weeks' notice. Each contained the following provisions:

"4. PROVISIONS CONCERNING PAYMENT OF COMMISSIONS

"(a) The Station will pay Employee commissions only on advertising fees billed and collected. . . .

"(b) Upon termination of Employee for any reason, Employee shall be entitled to receive commissions on fees collected through the final date of his (her) actual employment. No commissions will be paid to the Employee on advertising fees received by the Station after the Employee's final date of actual employment."

On March 17, 1989, Ellis voluntarily chose to leave KUSI. After he left, the station collected nearly $100,000 in fees on advertising previously sold by Ellis. Ellis did not receive a commission on these sales.

Before leaving, Ellis reread the contract and became aware of the provision denying commissions on advertising receipts collected after termination. In a memo advising his supervisor of his intended departure date Ellis wrote, "I expect to be commissioned on all monies collected through the close of business on March 17, 1989." He later decided to challenge the forfeiture provision in the employment contract which denied him commissions on sales receipts collected after he quit.

---

[1] The June 1987 contract is identical to the December 1986 written contract for purposes of this appeal.

DISCUSSION

*The contract is unambiguous.*

 ■ "[T]he interpretation of a written instrument presents a question of law to be decided de novo by an appellate court." (*Broffman* v. *Newman* (1989) 213 Cal.App.3d 252, 257 [261 Cal.Rptr. 532].) " 'Even where extrinsic evidence was offered in the trial court, a reviewing court is not bound by the trial court's findings if the extrinsic evidence is not in conflict . . . .' " (*Ibid.*, quoting *Okun* v. *Morton* (1988) 203 Cal.App.3d 805, 816 [250 Cal.Rptr. 220]; see also *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 891 [222 Cal.Rptr. 455] ["[I]t is only when the foundational extrinsic evidence is in conflict that the appellate court gives weight to anything other than its de novo interpretation of the parties' agreement"].) Here, the extrinsic evidence was not in conflict. We thus review the contract de novo.

 ■ Ellis relies on section 5 of the contract entitled "GENERAL EMPLOYMENT PROVISIONS" to argue the contract language is ambiguous. That section provides in part: "(d) Upon termination of Employees' [*sic*] employment under this Agreement, Employee shall be entitled to the salary, commissions and benefits *earned* through and including the effective date of termination. . . ." (Italics added.) As noted previously, section 4 entitled "PROVISIONS CONCERNING PAYMENT OF COMMISSIONS" states: "(b) Upon termination of Employee for any reason, Employee shall be entitled to receive commissions on fees *collected* through the final date of his (her) actual employment. No commissions will be paid to the Employee on advertising fees received by the station after the Employee's final date of actual employment." (Italics added.)

Ellis contends these two provisions conflict because one uses the language "earned" while the other uses "collected." He claims commissions are "earned" when advertising is sold rather than when payment is collected. Ellis argues the ambiguity thus created must be resolved against the drafting party. (*Goddard* v. *South Bay Union High School District* (1978) 79 Cal.App.3d 98, 105 [144 Cal.Rptr. 701].)

 ■ "[W]here two clauses of an agreement appear to be in direct conflict, it is the duty of the court to reconcile such clauses so as to give effect to the whole of the instrument. [Citation.] In so construing an agreement no term shall be considered uncertain or ambiguous if its meaning can be ascertained by fair inference from the terms of the agreement." (*In re Marriage of Whitney* (1977) 71 Cal.App.3d 179, 182-183 [139 Cal.Rptr. 324].)

Here, the term "earned" may be ambiguous in the abstract. Is·a commission "earned" when the advertising is sold or when the payment is received from the advertiser? Any ambiguity is clarified, however, by paragraph 4. Subparagraph (a) states that commissions will be paid "only on advertising fees billed and collected." Subparagraph (b), the very clear forfeiture provision, specifies that "[n]o commissions will be paid to the Employee on advertising fees received by the Station after the Employee's final date of actual employment." Construing all provisions of the contract together as we must, there is no ambiguity. The written agreement clearly purports to deny Ellis any commissions on advertising fees paid to KUSI after the termination of his employment.

*The forfeiture provision denying payment of commissions after termination is unconscionable.*

Civil Code section 1670.5 describes the doctrine of unconscionability applicable to contracts of all types in California: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Civ. Code, § 1670.5, subd. (a).[2]) Ellis contends that even if the contract is unambiguous, the provision limiting payment of commissions after termination of employment is unconscionable. We agree.

" '[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' [Citation.]" (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) In *A & M Produce,* this court recognized that unconscionability has both a "procedural" and a "substantive" aspect. (*Ibid.*) "The procedural element focuses on two factors: 'oppression' and 'surprise.' [Citations.] 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and an 'absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.' [Citations.]" (*Ibid.*)

"Substantive" unconscionability, on the other hand, "refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made. [Citation.]" (*Carboni* v. *Arrospide*

---

[2]All statutory references are to the Civil Code unless otherwise specified.

(1991) 2 Cal.App.4th 76, 83 [2 Cal.Rptr.2d 845].) "[B]oth procedural and substantive unconscionability must be present before a contract or clause will be held unenforceable. However, there is a sliding scale relationship between the two concepts: the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause. [Citations.]" (*Ibid.*)

 The issue before us is whether the trial court correctly decided that the commission forfeiture provision in the contract was enforceable. In making this determination, it is important to keep in mind that unconscionability is ultimately a question of law, although "numerous factual inquiries bear upon that question." (*A & M Produce, supra*, 135 Cal.App.3d at p. 489.) Unlike some other cases in this area, the facts before the trial court here were undisputed and the trial court expressly made its findings as a matter of law.[3]

The evidence of procedural unconscionability in the form of "unfair surprise" consists of the fact that Ellis was unaware of the forfeiture provision until he reread his employment contract shortly before he gave notice to KUSI of his intent to leave. It is true Ellis could have read the contract more closely when it was presented to him for his signature. His failure to do so, however, is hardly surprising. He was asked to sign the contract without warning and told it was a mere "formality." He had no reason to suspect it contained a forfeiture term which had never been discussed with him previously. As explained in *A & M Produce*, " 'The burden should be on the party submitting [a standard contract] in printed form to show that the other party had knowledge of any unusual or unconscionable terms contained therein.' " (135 Cal.App.3d at p. 490, quoting *Weaver v. American Oil Company* (1972) 257 Ind. 458 [276 N.E.2d 144, 146 49 A.L.R.3d 306]; see also *Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1666 [18 Cal.Rptr.2d 563].) Certainly a provision of this nature which results in an individual employee's forfeiture of substantial income—here nearly $20,000 which was otherwise earned—must be classed as "unusual." Moreover, as a practical matter, Ellis was in no position to negotiate where the written contract was first presented to him two weeks after he had moved from Salinas to begin work.

Even assuming Ellis knew or should have known of the forfeiture provision does not preclude a finding of unconscionability. (See *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165].) The alternative form of procedural unconscionability—"oppression"

---

[3]In rendering its decision, the court commented, "The testimony was all good and I believed all the testimony and it was all consistent. The facts from all the witnesses, both on direct and cross examination were all the same so there was really no factual dispute here."

based on unequal bargaining power—is also clearly present on this record. KUSI is a corporation operating a television station. Ellis is a single employee who moved across state to work for KUSI and had no other job offers. (See generally *Carboni v. Arrospide, supra,* 2 Cal.App.4th at p. 86 [lack of alternatives creates inferior bargaining position].) The employment contract is a preprinted form agreement with blanks for the employee's name, the date, and the amount of the draw. Indeed, KUSI does not dispute that it occupied a superior bargaining position. Instead, it argues that certain aspects of the contract (i.e., starting date, commission rate, amount of draw, etc.) were actually negotiated and that, in any event, Ellis never attempted to modify the objectionable forfeiture term.

■ The mere fact that certain terms of a standardized contract vary among inferior parties does not demonstrate that the objectionable provision was actively negotiated nor eliminate the possibility that such a term is unconscionable. (See *A & M Produce, supra,* 135 Cal.App.3d at p. 491 and fn. 13 [payment terms were negotiable; unconscionable disclaimers were not].) ■ Similarly, the fact that Ellis never objected to the forfeiture provision—not surprising since he concedes he never read it—does not prove it *was* negotiable. Significantly, there was no evidence that the forfeiture provision was missing from the employment contract of any other sales account executive. In any event, to paraphrase the discussion in *A & M Produce,* "Although [KUSI] contends that in some special instances, individual contracts are negotiated, [Ellis] was never made aware of that option." (135 Cal.App.3d at p. 491.)

■ Of course, contracts between parties of unequal bargaining power are routinely enforced, and the fact that one party is surprised by the inclusion of a term will clearly not void a contract. Central to a determination of unconscionability is an assessment of the substantive reasonableness of the challenged provision. A compelling case of substantive unreasonableness will overcome a relatively weak showing of procedural unconscionability. (*Carboni v. Arrospide, supra,* 2 Cal.App.4th at p. 86.)

■ ■ Apparently recognizing that substantive unconscionability " 'turns not only on a "one-sided" result, but also on an absence of "justification" for it' " (*A & M Produce, supra,* 135 Cal.App.3d at p. 487, quoting Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of UCC Section 2-719(2)* (1977) 65 Cal.L.Rev. 28, 45), KUSI offers two justifications for the forfeiture provision. It first argues that 10 to 15 percent of an account executive's time is spent on postsale servicing of the account. KUSI asserts that someone else was required to perform this function on certain of Ellis's accounts after he left the station. In this regard KUSI relies

on *Division of Labor Standards Enforcement* v. *Dick Bullis, Inc.* (1977) 72 Cal.App.3d Supp. 52 [140 Cal.Rptr. 267]. In *Dick Bullis*, an automobile salesperson challenged the enforceability of a provision in her employment contract which denied her commissions on vehicles " 'not actually physically delivered and licensed prior to termination of employment.' " (*Id.* at p. Supp. 55.) The court noted that before delivery, the "sale" of car was a "mere order for an automobile [which could] be canceled" by the customer. (*Id.* at p. Supp. 56.) Accordingly, it held the disputed provision was enforceable.

*Dick Bullis* is distinguishable on several grounds. Most importantly, it was never argued that the forfeiture provision in that employment contract was unconscionable. Indeed, *Dick Bullis* was decided two years before the Legislature enacted section 1670.5 of the Civil Code (making the Uniform Commercial Code doctrine of unconscionability applicable to all contracts in California) and five years before the decision in *A & M Produce* articulated a framework for analyzing unconscionability contentions. ▮ Fundamentally, a decision is not authority for a proposition it does not consider and resolve. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

▮ In addition, the court's conclusions in *Dick Bullis* were based expressly on the fact that a car was not sold until the vehicle was delivered; before that the salesperson merely had an order which could be canceled. In effect, the employment contract merely defined the point in time when the sale was closed and the commission earned. In contrast here, KUSI does not argue that Ellis did not complete the "sale" of the advertising as to which he is claiming a commission. Rather the issue is simply a matter of when KUSI received payment for the advertising, which appears to turn on KUSI's billing cycle and the advertisers payment practices instead of on anything Ellis did or did not do.[4]

KUSI also argues the forfeiture provision is justified because Ellis was guaranteed a monthly salary of $2,166 for the first three months regardless of whether he sold any advertising. Again, however, the lack of proportionality defeats KUSI's argument. The record does not reveal the amount of

---

[4]This is not to say that the postsale servicing of advertising contracts which departing employees do not perform must be ignored by KUSI in the payment of commissions. It is unclear from the record whether this postsale servicing refers to obligations incurred under the contract or instead represents contacts designed to obtain more advertising in the future. To the extent it means the former rather than the latter, the employment contract could include a percentage deduction on uncompleted contracts to account for the services Ellis would be unable to render, as long as the percentage was reasonable. (See *Chretian* v. *Donald L. Bren Co.* (1984) 151 Cal.App.3d 385 [198 Cal.Rptr. 523].) Based on the record here we assume it could be no more than 15 percent.

advertising sold by Ellis or the average account executive during the first three months of work. Assuming he sold nothing, Ellis would have received a little over $6,000 in "unearned" salary during the first three months, yet the forfeiture provision results in his losing nearly $20,000. If recovery of the guaranteed salary were truly the object of the contract provision, "unearned" amounts during the first three months could be recorded on the books as a credit against sums due after termination of employment. As written, however, the provision is a commercially unreasonable forfeiture clause, exacting a penalty far in excess of any potential detriment suffered by KUSI.

■ There is no question the forfeiture provision is substantively unconscionable. That conclusion, combined with the fact that the clause inures to the benefit of the party with superior bargaining power which inserted it in a standard form employment contract superseding a prior oral agreement without alerting the employee to the additional term, requires that we hold the clause is unconscionable within the meaning of section 1670.5 and therefore unenforceable.

## DISPOSITION

The judgment is reversed with directions to the trial court to enter judgment in favor of plaintiff John Ellis in the amount of $19,768.12, the stipulated value of his 20 percent commission on the advertising fees collected by KUSI after the termination of his employment. Ellis shall recover his costs for this appeal.

Work, J., and Todd, J., concurred.