**Anne MCCOLLUM, Plaintiff,**

v.

**XCARE.NET, INC. and Does 1 through 5, inclusive, Defendants.**

No. C01–1738 CW.

United States District Court,
N.D. California.

May 31, 2002.

Noah D. Lebowitz, Sharon R. Vinick, McGuinn, Hillsman & Palefsky, San Francisco, CA, for plaintiff.

Gregory S. Tamkin, R. Stephen Hall, Stephen D. Bell, Denver, CO, for defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Defendant XCare.net, Inc. (XCare) moves for summary judgment on Plaintiff Anne McCollum's six causes of action. Plaintiff opposes the motion. All of Plaintiff's claims arise from the termination of Plaintiff's employment with Defendant. The matter was heard on April 19, 2002. Having considered all of the papers filed by the parties and oral argument on the motion, the Court denies the motion (Docket # 35).

## BACKGROUND

In June, 2000, Defendant hired Plaintiff as its Director of eHealth Solutions for the Western Region, a sales manager position. Plaintiff was hired as an at-will employee with a base salary of $85,000. Plaintiff was also informed that she would be eligible to receive sales commissions over and above her salary in accordance with XCare's 2000 Sales Incentive Compensation Plan (Comp Plan). For purposes of this motion, it is undisputed that the Comp Plan is enforceable as a contract between Plaintiff and Defendant. Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 9. The Comp Plan was written by Tom Pianko, Defendant's Senior Vice President for Sales, Marketing and Business Development. Declaration of Noah D. Lebowitz (Lebowitz Dec.), Ex. B (Pianko Dep.) at 140:23–141:6. Plaintiff contends that the Comp Plan was presented to her as the company's "standard commission plan" and that the Plan "was not open to negotiation." Declaration of Anne McCollum (McCollum Dec.) ¶ 3.

Plaintiff began employment with Defendant on July 5, 2000. At that time, Foundation Health Systems (FHS) was Defendant's only existing account in the Western Region. One of Plaintiff's duties as an employee of Defendant, therefore, was to work on consummating a Technology Partnership Contract (TPC) with FHS. According to Plaintiff, the TPC was envisioned as a two year agreement that would have resulted in approximately $10 million in revenue to Defendant. The TPC was scheduled to be signed on September 22, 2000, but FHS sought last minute changes to the contract and the signing date was postponed. On September 29, 2000, FHS and Defendant entered into an interim agreement allowing XCare to realize revenue from its business relationship with FHS while negotiations on the larger TPC continued. An internal XCare e-mail produced through discovery and entitled "FHS/XCare.net Technology Partnership Agreement" states that Defendant intended to sign the TPC on Thursday, October 12, 2000.

On October 6, 2000, Pianko circulated an e-mail entitled "Layoffs–Reorganization/Cost Cutting." In this e-mail, Pianko stated that Plaintiff would be "let go" at the end of the business day on October 11. On October 9, 2000, Pianko stated that Plaintiff's termination was because her "performance had not met expectations." On October 10, 2000, Plaintiff received an e-mail communication from her supervisor, Laurie Heilman. The e-mail stated,

Ann,

As per our conversation at 4:30 today, please follow the directions below.

1) You are not to make any contact with FHS or any associated business of FHS/NVG. You are no longer responsible for

the account as a result of several complaints both inside those clients and your colleagues. You will be paid for commissions related to those accounts up to September 30.

. . .

I have given you a choice of accepting a performance improvement plan which will outline in detail numerous performance related issues over the past few months or work out a mutually acceptable transition plan.

Plaintiff responded,

I accept your offer to work out a 30 day transition plan, as I think it will be best for all involved.

After receipt of this e-mail, Plaintiff ceased all contact with FHS. Plaintiff received her final paycheck from Defendant in mid-October. That paycheck included both her salary and her commission on the interim agreement signed on September 29, 2000. Defendant subsequently sent to Plaintiff a resignation agreement. Plaintiff refused to sign the agreement because it precluded her from receiving a commission on the TPC. After Plaintiff refused to sign the resignation agreement, Robin Orr, Defendant's Director of Human Resources stated in an e-mail to Pianko, "We are taking the position that [Plaintiff] resigned effective 10/11/2000." In its moving papers, however, Defendant contends that Plaintiff resigned her employment with Defendant effective October 13, 2000. Plaintiff contends that her employment was terminated by Defendant.

The TPC was signed on October 20, 2000. Plaintiff did not receive any commission on the TPC. Plaintiff contends that under the terms of the Comp Plan, she is entitled to a commission of $570,130 for her work on that contract.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Id.; see also Lujan v. Nat'l Wildlife Fed'n,* 497

U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan,* 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## DISCUSSION

### A. Breach of Contract

Defendant contends that its refusal to pay Plaintiff a commission on the TPC did not breach any of the terms of the Comp Plan. In support of this argument Defendant relies on several provisions of the Plan. The relevant provisions of the Comp Plan are as follows:

1.4 Plan Administration.... Interpretation of this Plan is at the sole discretion of XCare.net.

1.5 Employment.... If an employee terminates employment at XCare.net at any time prior to actual payment of a commission, unearned or otherwise deferred commission payments that have not been disbursed to Plan provisions [sic] will be forfeited.... Any unallocated quota or commission of a terminated employee cannot be relocated to another employee....

1.6 Territory Assignment. Plan Participants will be assigned specific accounts ... in writing by their sales management team. XCare.net management reserves the right to exclude and/or reassign specific accounts ... based on superseding XCare.net objectives. Territory or account assignments are subject to change upon written notice from Plan Participant's sales management team.

. In the event of an internal XCare.net job, territory, or account change, commission payments not yet due can follow the Plan Participants to their new job, when applicable, so long as it is agreed in advance and documented in writing by the appropriate Executive Director of Sales, with approval from the Senior Vice President Sales & Business Development.

4.15 Payment of Commissions. XCare shall calculate commissions within 15 days following the close of each calendar month and shall pay commissions pursuant to the provisions of this plan by the end of the month following the quarter's end....

4.5 Commission Issues.... Any deferred commissions or bonuses not paid as of the employee's date of termination, are forfeited, regardless of the year commissions were earned.

Defendant contends that these provisions, taken together, expressly provide that Defendant is not obliged to pay commissions to an employee who is reassigned from the account on which the commission is earned or to an employee who is no longer employed at the time that payment of the commission is due.

The October 10 e-mail from Plaintiff's supervisor specifically terminated Plaintiff's responsibility for the FHS account. Consequently, Defendant argues that because the FHS account was "reassigned" prior to payment of the commission to Plaintiff, no commission is due Plaintiff for her work on this account. *See* Comp Plan § 1.6, *supra.* In addition, Defendant con-

tends that Plaintiff's October 10 response to her supervisor's e-mail constituted a voluntary resignation from employment with Defendant. Defendant argues that pursuant to sections 1.5 and 4.5, Plaintiff forfeited her commission when she voluntarily resigned before the commission was actually paid. Furthermore, Defendant argued at the hearing on this motion that even if Plaintiff was terminated by Defendant, her commission was forfeited pursuant to section 4.5.

### 1. Voluntary Resignation

■ As detailed above, section 1.5 of the Comp Plan provides that an employee who "terminates employment ... at any time prior to actual payment...." forfeits all unpaid commissions. Defendant argues that Plaintiff voluntarily resigned upon sending the October 10 e-mail to her supervisor. That e-mail stated, "I accept your offer to work out a 30 day transition plan." Defendant contends that this statement constitutes a resignation and was effective October 13, 2000. In the alternative, Defendant argues that even if Plaintiff's resignation was effective 30 days in the future, she still forfeited her commission by resigning before any commission on the TPC was due to be paid.[1]

There are disputed material questions of fact relevant to whether Plaintiff resigned or was terminated. Specifically, in correspondence predating Plaintiff's e-mail exchange with her supervisor, Pianko and Orr indicated that, effective October 11, Plaintiff was going to be either laid off for cost-cutting purposes or terminated because of poor performance. These statements raise a disputed question as to whether the action taken on October 10 was a termination consistent with these

discussions. In addition, Plaintiff's October 10 e-mail is not an unequivocal resignation. That e-mail accepts Defendant's offer to "work out a mutually acceptable transition plan." Because no transition plan was ever agreed to, the condition precedent to Plaintiff's resignation was never met.

Consequently, there is a material dispute of fact as to whether Plaintiff resigned or was terminated. Defendant does not argue that section 1.5 of the Comp Plan applies to employees whose employment was terminated by Defendant. Therefore, the dispute over whether Plaintiff resigned or was terminated precludes summary judgment that the refusal to pay Plaintiff's commission was authorized by that section of the Comp Plan.

### 2. Reassignment and Termination

Defendant also argues that the statement "you are no longer responsible for the [FHS] account" in the October 10 e-mail from Plaintiff's supervisor to Plaintiff effectively reassigned that account as contemplated by the Comp Plan. *See* Comp Plan § 1.6 ("Territory or account assignments are subject to change upon written notice from Plan Participant's sales management team."). In the event that an employee is removed from an account, the Comp Plan provides that commission payments can follow that employee to his or her new job only if "agreed to in advance and documented in writing by the appropriate Executive Director of Sales...." Because Defendant never agreed to pay Plaintiff additional commissions on the FHS account, Defendant argues that she forfeited any commission payments. In addition, Defendant argued at the hearing

---

**1.** The TPC was signed on October 20, 2000. Pursuant to section 4.15 of the Comp Plan, any commission due on that contract would be paid no later than January 31, 2001. *See*

Comp Plan section 4.15 (commissions to be paid "by the end of the month following the quarter's end").

on this motion that, under section 4.5 of the Comp Plan, Plaintiff forfeited her commission even if she was terminated by Defendant.

Plaintiff contends that Defendant's reading of the contract renders the forfeiture provision unconscionable and unenforceable.

### a) Unconscionable Contracts Under California Law

The parties disagree on the proper legal standard for finding a contract unconscionable. However, some elements of that standard are not in dispute. For example, the parties agree that under California law, unconscionability has both a procedural and a substantive component.[2] They further agree that

> [t]he procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.

*Ellis v. McKinnon Broad. Co.*, 18 Cal. App.4th 1796, 1803, 23 Cal.Rptr.2d 80 (1993); *see also American Software, Inc. v. Ali*, 46 Cal.App.4th 1386, 1390, 54 Cal. Rptr.2d 477 (1996) ("Indicia of procedural unconscionability include oppression ... and surprise ...") (internal citations omitted).

Plaintiff relies on *Ellis* for the legal definition of substantive unconscionability as well. Under *Ellis*, "substantive unconscionability ... refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made." *Ellis*, 18 Cal.

App.4th at 1803–04, 23 Cal.Rptr.2d 80. Defendant, on the other hand, relies on *Ali*, where the California Court of Appeal held that a contract is substantively unconscionable only if the "contract terms [are] so one-sided as to shock the conscience." 46 Cal.App.4th at 1390, 54 Cal.Rptr.2d 477.

Defendant places excessive reliance on the language used in *Ali* to describe the unconscionability doctrine. The substantive standard for unconscionability found in *Ali* does not differ in any meaningful way from the *Ellis* standard despite the differences in language. Rather, the two cases are part of a longer, more complicated and, thus far, unsuccessful effort of California courts to find a uniform formulation of what constitutes an unconscionable contract.

The story begins with *Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 820, 171 Cal. Rptr. 604, 623 P.2d 165 (1981) where the California Supreme Court defined an unconscionable contract as one that "considered in its context, is unduly oppressive." The California Court of Appeal, in *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 186 Cal.Rptr. 114 (1982), applied the *Graham* holding by dividing the contract that was being challenged into procedural and substantive components. That court held that a contract is unenforceable as unconscionable only if it is both procedurally and substantively unconscionable.

In the wake of *A & M Produce*, some California courts have followed its bifurcated approach, while others have analyzed unconscionability in the unitary manner of *Graham*. Those courts that have adopted the bifurcated approach have not identified a single characteristic of a substantively unconscionable contract. Rather, they have utilized a "sliding scale" approach whereby extraordinarily oppressive sub-

---

**2.** Defendant does not dispute that California law applies to this action.

stantive terms will require less in the way of procedural unconscionability to render a contract unenforceable. *See Carboni v. Arrospide,* 2 Cal.App.4th 76, 83, 2 Cal. Rptr.2d 845 (1991); *Ellis,* 18 Cal.App.4th at 1804, 23 Cal.Rptr.2d 80 ("there is a sliding scale relationship between the two concepts: the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause").

On the other hand, those courts that have analyzed unconscionability without separating the procedural and substantive components have held that only a contract that, when viewed as a whole, "shocks the conscience" is unconscionable. *See California Grocers Assoc. v. Bank of America,* 22 Cal.App.4th 205, 214, 27 Cal.Rptr.2d 396 (1994).

In *Ali,* the court merged these two approaches. That court held, in accord with *A & M Produce* and its progeny, that unconscionability requires an analysis of both the procedural and substantive components of the contract. *See Ali,* 46 Cal. App.4th at 1391–92, 54 Cal.Rptr.2d 477 (separately addressing both procedural and substantive unconscionability). The *Ali* court used the term "shocks the conscience" to describe the standard for substantive unconscionability. The *Ali* court stated that its approach differed from the *Ellis* approach. However, the California Supreme Court has noted, in discussing the difference between the unitary approach of *Graham* and the bifurcated approach of *A & M Produce,* that "[b]oth pathways should lead to the same result." *Perdue v. Crocker National Bank,* 38 Cal.3d 913, 925 n. 9, 216 Cal.Rptr. 345, 702 P.2d 503 (1985). Similarly, in this case, both the *Ellis* and *Ali* approaches lead to the same result. The relevant question, therefore, is which of the two cases present facts most analogous to those presented here.

### b) Relevant California Precedent

In both *Ellis* and *Ali,* the California Court of Appeal addressed whether forfeiture provisions similar to the one at issue here were unconscionable under California law. In both cases, the disputed provisions, like the disputed provision here, were contained in employment contracts between salespersons and their employers. In both cases, the contracts required the plaintiffs to forfeit commissions that were not collected prior to the termination of their employment. In *Ellis,* sales commissions were forfeited if the employer did not receive payment for the sale prior to the employee's separation from employment. Similarly, in *Ali,* commissions were forfeited if the employer did not collect payment on the sale within thirty days of the employee's resignation or ninety days of the employee's involuntary discharge.

In *Ellis,* the court held that the forfeiture provision was procedurally unconscionable based on the inequality of bargaining power between the parties, the fact that the employer had drafted the agreement, and the lack of negotiation over the provisions of the commission plan. 18 Cal. App.4th at 1804, 23 Cal.Rptr.2d 80. In *Ali,* the court reached the opposite conclusion, noting that the plaintiff's attorney had reviewed the contract and that the plaintiff had "enough bargaining 'clout' to successfully negotiate for more favorable terms on other provisions" of the contract. 46 Cal.App.4th at 1392, 54 Cal.Rptr.2d 477.

With regard to substantive unconscionability, the *Ellis* court found that the forfeiture of $20,000 earned by the plaintiff was sufficiently unreasonable and without justification that, when combined with the procedural oppression, the contract was unenforceable. Critical to the court's holding of substantive unconscionability was the finding that the forfeiture was caused by the employer's "billing cycle and the ad-

vertisers' payment practices instead of on anything [the plaintiff] Ellis did or did not do." 18 Cal.App.4th at 1806, 23 Cal. Rptr.2d 80.

The *Ali* court, however, reached a different conclusion when analyzing the substance of the post-termination commission forfeiture provision at issue in that case. In *Ali*, the court found that forfeiture of commissions did not "represent an overly harsh allocation of risks" because the employer had undertaken an equivalent risk under the contract. Specifically, Ali's contract provided for a monthly nonrefundable "draw." The plaintiff's commission payments were reduced by the amount of the draw. Although Ali risked losing unpaid commissions in the event of termination of employment, the employer "took the risk that at the time of Ali's termination, she would not have earned sufficient commissions to cover the substantial draws 'credited' to her." *Ali,* 46 Cal. App.4th at 1393, 54 Cal.Rptr.2d 477. Because both parties risked losses upon termination of employment, the terms were not substantively unconscionable.

#### c) The Comp Plan and Unconscionability

▮ Ultimately, unconscionability is question of law to be decided by the Court. *Ali,* 46 Cal.App.4th at 1391, 54 Cal.Rptr.2d 477. However, "numerous factual inquiries bear upon that question, e.g., the business conditions under which the contract was formed...." *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.,* 89 Cal.App.4th 1042, 1055,

107 Cal.Rptr.2d 645 (2001). Only where "the extrinsic evidence [is] undisputed" will the court be able to determine unconscionability absent predicate findings of fact. *Id.* In addition, because there is a "sliding scale" relationship between procedural and substantive unconscionability, *Ellis, supra,* 18 Cal.App.4th at 1804, 23 Cal.Rptr.2d 80, disputed questions of fact with respect to either the procedural or substantive aspects of the contract will preclude a legal determination of unconscionability. In this case there are disputed questions of fact on both aspects of the forfeiture provision.

▮ Plaintiff has presented evidence that the factors leading to a finding of procedural unconscionability in *Ellis* may be present in this case as well. Plaintiff contends that Defendant drafted the Comp Plan and that the Comp Plan was a standard policy, which Plaintiff was not able to negotiate. This evidence may be sufficient for a showing of procedural unconscionability. Defendant, however, argues that Plaintiff cannot credibly contend she was surprised by the terms of the Comp Plan because those terms are clear and explicit. In addition, Defendant contends that Plaintiff's failure to negotiate revisions to the Comp Plan does not mean that such negotiation was impossible.[3] The extent of unequal bargaining power between the parties, Plaintiff's ability to negotiate various provisions of the Comp Plan, and whether the forfeiture provisions were hidden within the terms of the Plan are all

---

**3.** Defendant also relies on *Ali* for the proposition that the forfeiture provision at issue here is "commonplace in employment contracts with sales representatives ..." 46 Cal.App.4th at 1393, 54 Cal.Rptr.2d 477. Defendant, however, has omitted an important limitation on the *Ali* court's finding. That court actually stated that "the contract provision *challenged here* is commonplace in employment con-

tracts with sales representatives, such as Ali, *who have ongoing responsibilities to 'service' the account once the sale is made."* *Id.* (emphasis added). The *Ali* court was referring to a forfeiture provision which differs in material respects from the one at issue here. Furthermore, there is no evidence in the record that Plaintiff's commissions, like Ali's, were tied to long-term servicing of her contracts.

disputed factual questions relevant to a finding of procedural unconscionability.

The substantive terms of the Comp Plan may, likewise, be sufficiently one-sided to justify a finding of unconscionability. The Comp Plan was purportedly designed to "recognize and reward" salespeople who reached desired sales goals. However, Defendant argues that it was not obliged to pay any commissions to salespeople who were reassigned, terminated or resigned prior to payment of commissions. Defendant, moreover, contends that it retained sole discretion to reassign accounts and discharge employees. Under this interpretation of the Comp Plan, Defendant could eliminate any obligation to pay earned commissions simply by unilaterally and arbitrarily reassigning the account prior to payment of the commission. Because, pursuant to the Comp Plan, commissions were not owed until one month after the quarter in which they were earned, Defendant could nullify earned commissions by reassigning an account after the sales contract was signed, but before the commission was actually paid.

In other words, under Defendant's interpretation of the forfeiture provision of the Comp Plan, Defendant gained the benefit of improved productivity from its salespeople by offering the incentive of potential commissions in addition to earned salary, but it was simultaneously under no obligation to provide the commissions detailed in the Comp Plan. This may be "an overly harsh allocation of risks and costs which is not justified by the circumstances under which the contract was made." *Ellis,* 18 Cal.App.4th at 1804, 23 Cal.Rptr.2d 80; *Ali,* 46 Cal.App.4th at 1393, 54 Cal.Rptr.2d 477.

Indeed, in this case, Plaintiff contends that her primary duty as Director of eHealth Solution for the Western Region was to service the FHS account. She contends that she worked primarily on this account for approximately three months, and that one day before a contract with FHS that would result in $10,000,000 in revenue to Defendant was scheduled to be signed (and ten days before the contract was actually signed), the account was reassigned without reason, resulting in forfeiture of over $500,000 in commission earned pursuant to the Comp Plan. A provision allowing this, like that in *Ellis,* may be substantively unconscionable.

Moreover, some of the provisions of the Comp Plan on which Defendant relies are ambiguous. For example, sections 1.5 and 4.5 of the Comp Plan deal with the allocation of commissions after the termination of employment. At the hearing on this motion, Defendant contended that these provisions require the forfeiture of commissions that have not been paid at the date of the employee's separation from employment, whether that separation is effectuated through discharge or resignation. Plaintiff, however, contends that the forfeiture provision applies only to employees who voluntarily resign employment. *See* Comp Plan § 1.5 (". . . If an employee terminates employment at XCare.net at any time prior to actual payment of a commission . . ."). As already noted, the parties dispute whether Plaintiff resigned or was discharged. If the forfeiture provision applies to discharged employees, it represents a more one-sided allocation of risks because forfeiture may result at the whim of the employer without any causal connection to the employee's conduct.

Similarly, Defendant argues that the Comp Plan provides Defendant unfettered discretion to reassign employees. However, the Plan actually states, "XCare.net management reserves the right to . . . reassign specific accounts . . . based on superseding XCare.net objectives." At the hearing on this motion, Defendant conceded that the terms of the Plan require it

to proffer some legitimate business reason for its decision to reassign an account. In this case, Defendant argues that Plaintiff's inadequate performance necessitated the reassignment of the FHS account, but there are factual disputes that preclude resolving this issue on summary judgment.

In sum, there are disputed questions of fact relevant to whether the Comp Plan was procedurally and substantively unconscionable. However, if the contract provides, as Defendant contends, that commissions are forfeited if the employee resigns, is reassigned, or is terminated prior to payment of those commissions and further provides that Defendant has the unreviewable right to reassign or terminate an employee at will, the forfeiture provision of the Comp Plan would be sufficiently one-sided to support a finding of substantive unconscionability. Plaintiff has also presented sufficient evidence from which a jury could find procedural unconscionability. Consequently, Defendant's motion for summary judgment that the terms of the Comp Plan permitted the employment action taken in this case is denied. There are disputed questions of material fact relevant to whether the terms of the Plan provide for the forfeiture of commissions in this circumstance and, if so, whether those terms are unconscionable under California law.

### B. Covenant of Good Faith and Fair Dealing

 Every contract contains an implied-in-law covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 683–84, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). The covenant serves to guarantee "that neither party will do anything to frustrate the right of the other to receive the benefits of the agreement." *Kuhn v. Dep't of Gen. Servs.,* 22 Cal. App.4th 1627, 1637–38, 29 Cal.Rptr.2d 191 (1994). Defendant contends that this implied contract term cannot nullify an ex-

press contractual provision. Specifically, Defendant argues that the express terms of the Comp Plan grant it discretion to reassign accounts at will. Because it acted in compliance with the written terms of the Comp Plan, Defendant argues that it could not have violated an implied covenant contained in that agreement.

 California law is clear, however, that "where a contract confers one party with discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Locke v. Warner Brothers, Inc.,* 57 Cal.App.4th 354, 363, 66 Cal.Rptr.2d 921 (1997) (citing *Perdue v. Crocker Nat'l Bank,* 38 Cal.3d 913, 923, 216 Cal.Rptr. 345, 702 P.2d 503 (1985)). Consequently, if one party exercises its discretionary authority in bad faith for the purpose of frustrating the other party's legitimate expectations, it has breached the implied covenant. *Id.; Commercial Union Assurance Cos. v. Safeway Stores, Inc.,* 26 Cal.3d 912, 918, 164 Cal.Rptr. 709, 610 P.2d 1038 (1980).

Defendant's reliance on the general statements in several California cases to the effect that a court cannot imply a term that would eliminate an "express grant of discretionary power" is unpersuasive. *Nager v. Allstate Ins. Co.,* 83 Cal.App.4th 284, 289, 99 Cal.Rptr.2d 348 (2000) (citing cases); *see also Halvorsen v. Aramark Uniform Servs., Inc.,* 65 Cal.App.4th 1383, 77 Cal.Rptr.2d 383 (1998); *Gerdlund v. Elec. Dispensers Int'l,* 190 Cal.App.3d 263, 235 Cal.Rptr. 279 (1987); *Starzynski v. Capital Public Radio, Inc.,* 88 Cal.App.4th 33, 105 Cal.Rptr.2d 525 (2001).

The cases cited by Defendant are all inapposite. *Nager,* for example, does not hold, as Defendant suggests, that a bad faith claim is precluded where a written agreement grants one party discretionary power. Rather, in *Nager,* the court held

that there was no evidence that the defendant exercised its discretion in bad faith.

The remainder of the cases cited by Defendant involved suits brought by plaintiffs alleging that their discharges from employment violated implied covenants of good faith contained in their employment contracts. In these cases, California courts held that the covenant of good faith could not be used to imply a "just cause" requirement into at-will employment contracts. This holding was recently reaffirmed in *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). In that case, the California Supreme Court held that the covenant of good faith could not be used to impose substantive limits on an employer's authority to terminate an at-will employee. However, the court acknowledged that "the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled...." *Id.* at 353 n. 18, 100 Cal.Rptr.2d 352, 8 P.3d 1089. It is the latter situation that is alleged in Plaintiff's complaint.

 There are disputed questions of fact from which a fact finder could conclude that the October 10 e-mail from Plaintiff's supervisor was intended to frustrate Plaintiff's legitimate expectations under the Comp Plan by reassigning the FHS account, and/or terminating Plaintiff's employment, less than two weeks before the TPC was signed. Consequently, Defendant is not entitled to summary judgment on Plaintiff's second cause of action for violation of the implied covenant of good faith and fair dealing.

### C. Statutory Causes of Action

Plaintiff brings separate causes of action for violation of California Labor Code § 200 *et. seq.* and California Business and Professions Code § 17200.

 Under the California Labor Code, wages are defined to include commissions. Upon termination of employment, whether through dismissal or resignation, an employer has seventy-two hours to pay earned and unpaid wages to the departing employee. Cal. Labor Code §§ 202–203. Defendant, relying on its argument in support of its motion for summary judgment on the breach of contract claim, argues that Plaintiff is not owed the disputed commission and that her claim for unpaid wages, therefore, fails as a matter of law.

Plaintiff, however, has presented sufficient evidence from which a trier of fact could conclude that Defendant terminated Plaintiff's employment. *See supra* section A.1. Plaintiff, likewise, has presented sufficient evidence from which a trier of fact could conclude that the reason for this termination was to avoid paying the disputed commissions. If Plaintiff satisfies her burden on these two factual issues, she may be entitled to some or all of the commissions earned prior to her discharge. *See California Division of Labor Standards Enforcement Policies and Interpretations Manual*, § 17.6 (Oct.1998) ("Exceptions abound where the termination is not a quit but a discharge. In that case, the employee has been prevented from completing the duties and may be able to recover all or a prorata share of the commissions.").

Defendant acknowledges that California courts have held that "where the employer's policy or practice is forbidden by or found to violate the Labor Code, it may also be held to constitute an unlawful business practice subject to redress under [California Business and Professions Code § 17200]." *The Application Group, Inc. v. The Hunter Group*, 61 Cal.App.4th 881, 907, 72 Cal.Rptr.2d 73 (1998). Because Plaintiff has raised a material dispute of fact relevant to whether the failure to pay

her a commission on the TPC violated the California Labor Code, Plaintiff has also raised a disputed question of fact sufficient to withstand summary judgment on her unfair competition cause of action as well.

■■■ Plaintiff also argues that the forfeiture provision in the Comp Plan violates the unfair competition law, independent of any alleged labor code violation, because the forfeiture provision results in Defendant keeping earned, but unpaid, commissions without justification.

In *Cel–Tech v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999), the California Supreme Court held that a practice could violate § 17200 "even if not specifically proscribed by some other law." To determine if a specific practice is proscribed in the absence of an express statutory directive, the Court is instructed to draw on its equitable powers. *Id.* at 180–81, 83 Cal.Rptr.2d 548, 973 P.2d 527 ("the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive") (internal citations omitted).

The forfeiture provisions in the Comp Plan, as interpreted by Defendant, permit Defendant to frustrate the legitimate expectations of its employees. According to Defendant, it retains sole discretion to assign accounts at any time and for any reason it wishes. It further contends that if it chooses to reassign an account at any time prior to paying a commission—with commissions due, at the earliest, thirty days after the commission was requested—it is absolved of any obligation to make any payments pursuant to the terms of the Comp Plan. The forfeiture provision is, in effect, an escape clause which Defendant may invoke to avoid the obligations it voluntarily incurred through the Plan. The clause may be invoked, moreover, after

Defendant has received the benefit of the Comp Plan in the form of successful sales agreements which, absent the forfeiture provision, would lead to the payment of commissions under the Comp Plan.

Because the forfeiture provision permits Defendant to retain monies earned by its employees, it may be deemed an unfair practice under § 17200. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) ("A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices.")

**D. Wrongful Termination**

■■■ "[A] tort cause of action for wrongful termination in violation of public policy is … well established in California." *Pettus v. Cole*, 49 Cal.App.4th 402, 453, 57 Cal.Rptr.2d 46 (1996). A wrongful discharge action "will lie 'whenever the basis of the discharge contravenes a fundamental public policy.'" *Gould v. Maryland Sound Indus., Inc.*, 31 Cal.App.4th 1137, 1147, 37 Cal.Rptr.2d 718 (1995) (quoting *Soules v. Cadam, Inc.*, 2 Cal.App.4th 390, 401, 3 Cal.Rptr.2d 6 (1991)). In *Gould*, the California Court of Appeal held that "the prompt payment of wages due an employee is a fundamental public policy." 31 Cal.App.4th at 1147, 37 Cal.Rptr.2d 718. Consequently, the plaintiff in *Gould* stated a claim for wrongful discharge when he alleged that his employer discharged him to avoid paying commissions, vacation pay and other earned wages. *Id.*

■■■ Defendant contends that *Gould* is inapposite for two reasons. First, Defendant argues that Plaintiff was not terminated, but resigned. Consequently, she may not proceed on her claim for wrongful

termination. However, as noted above, there are disputed questions of material fact relevant to whether Plaintiff resigned or was terminated. *See supra* section A.1.

In addition, Defendant seeks to distinguish *Gould* on the grounds that *Gould* arose on a motion to dismiss rather than a motion for summary judgment. Defendant contends that the undisputed evidence—specifically, the terms of the Comp Plan—establish that Plaintiff was not owed a commission at the tirre of her alleged discharge. However, the gravamen of the wrongful termination claim is that the only reason Plaintiff was not owed a commission was Defendant's wrongful conduct. *Gould* unequivocally holds that a discharge motivated by a desire to avoid payment of accrued commissions and wages violates public policy. *See Gould*, 31 Cal.App.4th at 1148 n. 3, 37 Cal.Rptr.2d 718.

Plaintiff has presented sufficient evidence from which a fact finder could conclude that the personnel action taken on October 10 was a termination. There is, likewise, a material dispute over Defendant's motivation for taking that action.

### E. Declaratory Relief

The California Code of Civil Procedure provides that a party to a written contract may bring a cause of action seeking a judicial determination of the rights of the respective contracting parties. Cal.Code Civ.Proc. § 1060. Plaintiff seeks a judgment that, pursuant to the terms of the Comp Plan, she is entitled to a commission on the TPC. Defendant moves for summary adjudication that Plaintiff is not entitled to the disputed commission. For the reasons stated above, this question cannot be resolved on summary judgment.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied (Docket # 35).

There are several material disputes of fact that preclude summary judgment on Plaintiff's breach of contract claim. The parties dispute whether Plaintiff resigned or was discharged from employment, whether the forfeiture provision applies to discharged employees, whether, under the terms of the Plan, the FHS account was reassigned prior to the termination of her employment and whether the forfeiture clause is procedurally and substantively unconscionable.

There are also material disputes of fact precluding summary judgment on Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing. First, there is a dispute over whether the refusal to pay Plaintiff's commission is consistent with the terms of the Comp Plan. Second, even if the express terms of the Comp Plan granted Defendant discretion to reassign Plaintiff, there is a material dispute over whether this action was taken in bad faith to frustrate Plaintiff's legitimate expectations under the contract.

Defendant is not entitled to summary judgment on Plaintiff's statutory cause of action for unpaid wages because there is a dispute over whether the commissions were owed at the time of Plaintiff's separation from employment and whether Defendant terminated Plaintiff to avoid payment of the commission. Because violation of the Labor Code is an unfair business practice, Defendant's motion for summary judgment on that cause of action is denied as well.

Lastly, Defendant's motion for summary judgment on Plaintiff's wrongful discharge cause of action is denied because there is sufficient evidence from which a fact finder could conclude that the October 10 personnel action was a discharge and that it was

undertaken in order to avoid paying Plaintiff a commission on the TPC.