**Heather STERN, on behalf of herself and all others similarly situated**

v.

**CINGULAR WIRELESS CORP., et al.**

**No. CV 05–8842 CASCTX.**

United States District Court,
C.D. California.

July 28, 2006.

J Paul Gignac, Robert Curtis, Present for Plaintiffs.

Steven K. Hwang, Donald M. Falk, Present for Defendants.

SNYDER, District Judge.

**Proceedings: DEFENDANTS' MOTION TO COMPEL ARBITRATION** (filed June 8, 2006)

## I. INTRODUCTION AND BACKGROUND

The question presented on this motion is the enforceability of an arbitration clause

1. Defendants request that the Court take judicial notice of various exhibits attached to several declarations submitted in support of its motion. Plaintiff objects, on numerous evidentiary grounds, to certain of the exhibits and statements submitted by defendants. Because the Court's decision herein does not rest upon any of the challenged statements or exhibits, the Court need not address plaintiff's evidentiary objections, which are DENIED as moot.

contained in a wireless telephone service contract between plaintiff Heather Stern and defendant AT & T Wireless Services, Inc. ("AT & T Wireless"). On November 1, 2004, plaintiff signed a written agreement ("Service Agreement") with AT & T Wireless. Declaration of Cynthia Hennessy in Support of Defendants' Motion to Compel Arbitration ("Hennessy Decl.") Ex. C.[1] At that time, plaintiff received a box containing a new telephone and a 3-inch-by-5-inch, 27-page booklet ("Booklet") entitled "Important Information and Service Agreement," referred to by defendants as a "Welcome Guide." Declaration of Heather Stern in Opposition to Defendants' Motion ("Stern Decl.") ¶ 3; Opp'n at 3. The Booklet sets forth the terms and condition of the wireless service, and includes an "arbitration clause"[2] on pages 22 through 24.[3] Stern Decl. Ex. A at 25–27. The arbitration clause states in relevant part:

> The arbitration process established by this section is governed by the Federal Arbitration Act.... This provision is intended to be interpreted broadly to encompass all disputes or claims ... arising out of any aspect of our relationship.... All such disputes or claims whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, will be resolved by binding arbitration except that (1) you may take claims to small claims court if they qualify for hearing by such a court, or (2) you or we may choose to pursue

2. The "arbitration clause" is set forth in the Booklet section that includes five differently captioned paragraphs, numbered 25–29. *See* Stern Decl. Ex. A at 25–27.

3. The arbitration clause is also referenced on page 11 of the Booklet. Stern Decl. Ex. A at 13.

claims in court if the claims relate solely to the collection of any debts you owe to us.

*Id.* at 25. The arbitration clause also contains a class action waiver, which states in pertinent part:

By this Agreement, both you and we are waiving certain rights to litigate disputes in court. You and we both agree that any arbitration will be conducted on an individual basis and not on a consolidated, class wide or representative basis. If for any reason this arbitration clause is deemed inapplicable or invalid, or to the extent this arbitration clause allows for litigation of disputes in court, you and we both waive, to the fullest extent allowed by the law, any rights to trial by jury and to pursue any claims on a consolidated, class wide or representative basis.

*Id.* at 26–27. The arbitration clause further provides that:

An arbitrator may award any relief or damages (including injunctive or declaratory relief) that a court could award, except an arbitrator may not award relief in excess of or contrary to what this Agreement provides and may not order relief on a consolidated, class wide or representative basis.... Except for restrictions on class or representative relief, if any portion of this arbitration clause is determined by a court to be inapplicable or invalid, then the remainder shall still be given full force and effect.

*Id.* at 26. Defendants assert, and plaintiff does not appear to dispute, that the Service Agreement contained a statement by which plaintiff acknowledged that she had received and reviewed the terms and con-

ditions of the contract (presumably those contained in the Booklet) and agreed to be bound by them. Reply at 2. Plaintiff asserts, however, that she received the Booklet only after entering into the Service Agreement. Opp'n at 1.

Subsequent to plaintiff's agreement with AT & T Wireless, Cingular Wireless LLC [4] ("Cingular Wireless") acquired AT & T Wireless. Mot. at 1 n.1. Cingular Wireless' service agreement with its customers also includes an arbitration clause and class action waiver, although that clause, unlike the AT & T Wireless clause, states that Cingular Wireless will pay the costs of arbitration unless the suit is found to be frivolous, and that Cingular Wireless will pay the customer's attorneys' fees if the customer is awarded the amount of his or her demand or more. Declaration of David T. Biderman in Support of Defendants' Motion to Compel Arbitration ("Biderman Decl.") Ex. G.

On December 20, 2005, plaintiff filed a complaint, initiating a class action suit against Cingular Wireless, AT & T Wireless, and several Doe defendants (collectively, "defendants"). Plaintiff filed a First Amended Complaint ("FAC") on March 14, 2006, alleging the following claims for relief: (1) violation of the Federal Communications Act, 47 U.S.C. § 201; (2) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.;* (3) breach of contract; (4) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.;* and (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200, *et seq.* In her FAC, plaintiff alleges that defendants have perpetrated a scheme to overcharge plain-

---

**4.** Cingular Wireless LLC is erroneously sued as Cingular Wireless Corporation. Mot. at 1 n.1.

tiff and the class[5] by imposing service charges on customers' bills for services not authorized by those customers. FAC ¶ 1.

On June 8, 2006, defendants Cingular Wireless and AT & T Wireless moved to compel arbitration and stay the present litigation. On July 10, 2006, plaintiff filed an opposition to defendants' motion and, on July 17, 2006, defendants filed their reply. Defendants' motion is presently before the Court.

## II. LEGAL STANDARD

■ "An agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). As with any other contract dispute, the Court must first look to the express terms of the contract. *Id.*

■ The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is a matter to be determined by the court whether the FAA applies to a certain agreement; "[a]s a threshold matter, the FAA applies if, among other things, the contract requires dispute resolution 'by arbitration.'" Judge William W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial, § 16:63.1 (The Rutter Group 2002) (citing *Portland Gen. Elec. Co. v. United States Bank Trust Nat'l Ass'n as Tr. for Trust No. 1*, 218 F.3d 1085, 1089 (9th Cir.2000)).

■ Any party to an arbitration agreement covered by the FAA who is "aggrieved by the alleged ... refusal of another to arbitrate" may petition a federal district court[6] "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

■ Under the FAA, the court, not the arbitrator, must decide whether a particular dispute is arbitrable., 9 U.S.C. § 4; *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (holding that the arbitrator is without power to determine arbitrability absent "clear[ ] and unmistakabl[e]" language in the arbitration agreement conferring such power). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. *Chiron Corp.*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

---

5. Plaintiff brings this action on behalf of herself and "a nationwide class of all others similarly situated, and on behalf of a California state subclass of all others similarly situated." FAC ¶ 1.

6. With a few exceptions, the FAA standing alone does not create an independent basis for federal subject matter jurisdiction. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, an independent basis for federal jurisdiction must otherwise be established before a federal court can entertain a petition to compel arbitration under the FAA. *Id.*

*Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th Cir.1999) (noting that where an arbitration agreement has been signed by the parties with respect to the issues in dispute, "[s]uch agreements are to be rigorously enforced").

■ The FAA further provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In addition, "[a] trial court has authority to stay proceedings in the interest of saving time and effort for itself and litigants." *ATSA of California, Inc. v. Cont'l Ins. Co.,* 702 F.2d 172, 176 (9th Cir.1983).

## III. DISCUSSION

■ As a threshold matter, the parties dispute which arbitration provision is relevant for purposes of this motion. The parties agree that after plaintiff filed suit, Cingular Wireless sent her counsel a letter, dated May 30, 2006, which indicates that, as a former customer of AT & T Wireless, plaintiff was entitled to arbitrate under the terms of Cingular Wireless' arbitration provision. Mot. at 2; Biderman

Decl. Ex. G; Opp'n at 1 n.1. Defendants argue that "Cingular's policy of making its arbitration procedures available to all [AT & T Wireless] customers *moots* challenges to features of the [AT & T Wireless] provision that no longer apply." Reply at 9 (emphasis in original). Plaintiff responds that she entered an agreement with AT & T Wireless, and that Cingular Wireless' arbitration provision is therefore "not a part of the parties' agreement in this case." Opp'n at 1. Under California law, "[t]he critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties—not whether it is unconscionable in light of subsequent events." *Am. Software, Inc. v. Ali,* 46 Cal.App.4th 1386, 1391, 54 Cal.Rptr.2d 477 (1996); *see also Kinney v. United Healthcare Servs., Inc.,* 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348 (1999) (holding that procedural unconscionability is properly evaluated at the time a contract is negotiated); *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir.2003) (quoting *Kinney* ); *Carboni v. Arrospide,* 2 Cal.App.4th 76, 85, 2 Cal.Rptr.2d 845 (1991) (substantive unconscionability must be evaluated as of the time the contract was made); Cal. Civ. Code § 1670(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract") (emphasis added). Accordingly, for purposes of this motion, the Court concludes that the operable arbitration clause is not Cingular Wireless', but rather that contained in the AT & T Wireless Booklet provided to plaintiff at the time she entered into the Service Agreement.[7]

---

**7.** Plaintiff argues that the arbitration clause was not part of her agreement with AT & T Wireless because she did not receive the Booklet containing the arbitration provision until after entering into the Service Agreement. Opp'n at 6–9. Plaintiff thus contends that she did not assent to the arbitration clause, rendering it unenforceable. *Id.* Plain-

As noted above, the FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Ninth Circuit Court of Appeals, interpreting this language, has held that while arbitration agreements are generally enforceable, they are nonetheless "subject to all defenses to enforcement that apply to contracts generally." *Ingle,* 328 F.3d at 1170; *see also Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 936–37 (9th Cir.2001). In *Ingle v. Circuit City Stores, Inc.,* the Ninth Circuit held that "to evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). Here, except with respect to preemption by the FAA, the parties agree that California contract law governs, and that resolution of the present motion turns upon whether the disputed arbitration clause is held to be unconscionable in light of the Ninth Circuit's construction of such law.

 Under California contract law, unconscionability is one of several grounds upon which a contract may be found unenforceable. Cal. Civ.Code § 1670.5(a)

(West 1979). Unconscionability has two components—procedural and substantive. *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal. Rptr.2d 745, 6 P.3d 669 (2000); *Ingle,* 328 F.3d at 1170. A contract is procedurally unconscionable if at the time the contract was formed there was "oppression" or "surprise." *Discover Bank v. Superior Court of L.A.,* 36 Cal.4th 148, 160, 30 Cal. Rptr.3d 76, 113 P.3d 1100 (2005). Oppression exists if an inequality of bargaining power between the parties results in the absence of real negotiation and meaningful choice. *A & M Produce Co. v. F.M.C. Corp.,* 135 Cal.App.3d 473, 486, 186 Cal. Rptr. 114 (1982). Surprise "involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* at 486, 186 Cal.Rptr. 114. A contract is substantively unconscionable if the contract or a provision thereof is overly harsh or one-sided. *Armendariz,* 24 Cal.4th at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669. To be unenforceable, a contract must be both procedurally and substantively unconscionable. *Id.* However, courts use a sliding scale, "such that the greater the degree of unfair surprise or unequal bargaining power, the less the degree of substantive unconscionability required to annual the contract and vice versa." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89

---

tiff's signed Service Agreement specifies that it "incorporates by reference the ... Terms and Conditions and other information set forth in or provided in the AT & T Wireless Welcome/Features and Services user guide [(the Booklet)].... By signing below, you acknowledge that you have received and reviewed the ... Terms and Conditions ... and that you agree to be bound thereby for the term of your Agreement." Hennessy Decl. Ex. C. While the Court agrees that there may be some question as to whether plaintiff agreed to the arbitration provision, it will

address the issue of unconscioriability on the merits.

Plaintiff also asserts that her underlying claim falls within an exception to the arbitration clause, namely, for claims that "relate solely to the collection of any debts that [a customer owes] to [AT & T Wireless]." *Id.* at 9; Stern Decl. Ex. A at 26. In light of the Court's decision that the class action waiver is unconscionable and that the arbitration clause is therefore unenforceable, the Court does not reach this argument.

Cal.App.4th 1042, 1056, 107 Cal.Rptr.2d 645 (Ct.App.2001). Finally, the party challenging an arbitration agreement has the burden of proving unconscionability. *Crippen v. Cent. Valley RV Outlet, Inc.,* 124 Cal.App.4th 1159, 1165, 22 Cal.Rptr.3d 189 (2004).

In *Discover Bank,* the Supreme Court of California considered the validity of an arbitration clause class action waiver found in a contract between an issuing bank and credit cardholder. 36 Cal.4th at 152, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The plaintiff credit cardholder alleged that the bank employed a fraudulent late fees practice which caused small damages as to individual consumers but large damages in the aggregate. *Id.* The Court observed that "although adhesive contracts are generally enforced, class action waivers found in such contracts may also be substantively unconscionable inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy." *Id.* at 160–61, 30 Cal. Rptr.3d 76, 113 P.3d 1100 (citation omitted). The Court reasoned that because the cardholders' damages were small—a $29 late fee—the prospect of recovery was not adequate to induce them to pursue a claim, thereby insulating the bank from liability for its allegedly fraudulent scheme. *Id.* Accordingly, the Court held:

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually

small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Id.* at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (quoting Cal. Civ.Code § 1668 (West 1872)). The Court cautioned, however, that its ruling should not stand for the proposition "that all class action waivers are necessarily unconscionable." *Id.*

Plaintiff argues that under *Discover Bank,* the arbitration clause at issue here is unenforceable because the class action waiver it contains is unconscionable. Opp'n at 17. Defendants assert that the present circumstances are distinguishable from those in *Discover Bank,*[8] and that the instant arbitration clause is neither procedurally nor substantively unconscionable. Mot. at 7. With respect to procedural unconscionability, defendants argue that there was neither surprise nor oppression since plaintiff had notice of the provisions as well as a choice of wireless providers, including two providers whose service agreements did not contain arbitration clauses or class action waivers. *Id.* at 8–9. Additionally, defendants argue that the instant arbitration clause is not substantively unconscionable because Cingular Wireless' mandatory arbitration clause provides that Cingular Wireless will pay the full cost of arbitration for any dispute that is not frivolous or brought for an improper purpose and pay customers' attorneys' fees if the

**8.** Defendants predicate distinctions between this action and *Discover Bank* on the difference between Cingular Wireless' arbitration provision and that at issue in *Discover Bank.*

However, the Court has held that, for purposes of this motion, the AT & T Wireless Booklet contains the relevant arbitration clause.

arbitrator awards the customers the amount sought or more. *Id.* at 10–11.

Finally, defendants raise preemption, arguing that "[t]he FAA preempts any reading of *Discover* under which the class waiver in Stern's arbitration provision would be deemed unconscionable." *Id.* at 16, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Defendants reason that "a holding that conditions enforcement of consumer arbitration provisions on the defendant's amenability to class-wide arbitration would effectively kill off consumer arbitration because few, if any, businesses would agree to a procedure that affords none of the benefits of individual arbitration, yet multiplies the risks exponentially." *Id.* Defendants conclude that because "nothing could more squarely frustrate the purposes of the FAA, the doctrine of conflict preemption precludes that kind of broad reading of [*Discover Bank*]." *Id.* Lastly, defendants assert that the FAA prohibits courts from "impeding the enforceability of arbitration agreements by fashioning rules that invoke broad concepts of contract law but in fact apply only or predominantly to the arbitration setting." *Id.* at 17, 30 Cal.Rptr.3d 76, 113 P.3d 1100.

For the reasons set forth below, the Court agrees with plaintiff that the class action waiver clause contained in her Service Agreement is unconscionable and that the arbitration clause is therefore unenforceable.

### 1. Procedural Unconscionability

■ In *Ting v. AT&T*, 319 F.3d 1126 (9th Cir.2003), the Ninth Circuit explained that "[a] contract is procedurally unconscionable if it is a contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." 319 F.3d at 1148 (citing *Armen-*

*dariz,* 24 Cal.4th at 114, 99 Cal.Rptr.2d 745, 6 P.3d 669). Following *Ting,* the Court finds that plaintiff's Service Agreement with AT & T is procedurally unconscionable. As in *Ting,* here AT & T, the drafting party of superior bargaining strength, imposed the Service Agreement on plaintiff without an opportunity for negotiation, modification or waiver. *Id.* at 1149. Plaintiff could only adhere to the contract or reject it; the offered terms were supplied on a take-it-or-leave-it basis. *Id.* The Court is unpersuaded that, as defendants argue, "oppression" is absent because plaintiff had a choice of wireless providers whose contracts did not include a class action waiver. *See id.* Moreover, despite defendants' suggestion to the contrary, *Ting* rejected this same argument. 319 F.3d at 1189; *see also Laster v. T-Mobile USA, Inc.,* 407 F.Supp.2d. 1181, 1187–90 (S.D.Cal.2005) (finding that *Ting* rejected the same argument). Furthermore, "surprise" is also present. The one-page Service Agreement signed by plaintiff does not appear to reference an arbitration clause or class action waiver. Hennessy Decl. Ex. C. Plaintiff was, in theory, "notified" of the arbitration clause when she reviewed the Booklet, which came packaged with her new phone. Stern Decl. ¶ 3. Hence, assuming plaintiff did indeed review the Booklet, her first opportunity to avail herself of a wireless competitor's services came *after* her purchase of the phone. Her first opportunity to "negotiate" the arbitration clause likewise came after purchase. That negotiation could take but one form: cancel her service. The Court concludes that the circumstances in which the arbitration clause was presented to plaintiff indicate a substantial degree of procedurally unconscionable surprise. *See Laster,* 407 F.Supp.2d. at 1188–90 (finding unconscionable surprise on similar facts). Accordingly, pursuant to *Ting,* neither plaintiff's ability to acquire wire-

less telephone service elsewhere nor her awareness of the class action waiver are adequate substitutes for the opportunity to meaningfully negotiate, 319 F.3d at 1148 – 1149. Because the Court concludes that the procedural unconscionability is, at a minimum, substantial, plaintiff need only establish a modicum of substantive unconscionability. As explained below, the Court finds that she has done so.

## 2. Substantive Unconscionability

"Substantive unconscionability focuses on the one-sidedness of the contract terms." *Ting,* 319 F.3d at 1149 (citing *Armendariz,* 24 Cal.4th at 114, 99 Cal. Rptr.2d 745, 6 P.3d 669). In *Armendariz,* the California Supreme Court held that an arbitration agreement is unconscionable unless the remedy it provides contains "a modicum of bilaterality." 24 Cal.4th at 87, 99 Cal.Rptr.2d 745, 6 P.3d 669. Specifically, *Armendariz* explained that: "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope … the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself," absent "at least some reasonable justification for such one-sidedness."[9] *Id.* at 117–118, 99 Cal.Rptr.2d 745, 6 P.3d 669. This view has been repeatedly reaffirmed by the Ninth Circuit.

For example, in *Ingle,* the Ninth Circuit found that a bar on class-wide arbitration in an employer/employee arbitration agreement was substantively unconscionable under California law, inasmuch as the provision operated as unilateral bar in favor of the employer. 328 F.3d 1165, 1175–76 (9th Cir.2003). The Court stated:

We cannot conceive of any circumstances under which an employer would bring a class proceeding against an employee. Circuit City, through its bar on class-wide arbitration, seeks to insulate itself from class proceedings while conferring no corresponding benefit to its employees in return. This one-sided provision proscribing an employee's ability to initiate class-wide arbitration operates solely to the advantage of Circuit City. Therefore, because Circuit City's prohibition of class action proceedings in its arbitral forum is manifestly and shockingly one-sided, it is substantively unconscionable.

*Id.* at 1176. The Ninth Circuit employed similar reasoning in *Ting,* when finding that AT & T's Consumer Services Agreement violated California's Consumer Legal Remedies Act and Unfair Practices Act by barring customers from, among other things, pursuing claims against AT & T on a classwide basis:

It is not only difficult to imagine AT & T bringing a class action against its own customers, but AT & T fails to allege that it has ever or would ever do so.... [B]ecause "bilaterality" is a requirement in all California arbitration agreements, we affirm the district court's conclusion that the class-action ban violates California's unconscionability law.

319 F.3d at 1150 (citations omitted).

Under *Ingle* and *Ting,* the class action waiver contained in plaintiff's Service Agreement is substantively unconscionable. First, bilaterality is absent. Although styled as a mutual prohibition on class actions, the likelihood of defendants bringing a class action against their wireless customers is vanishingly small. *Ting,*

---

**9.** When evaluating whether an arbitration agreement is sufficiently bilateral, "courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting,* 319 F.3d at 1149.

319 F.3d at 1150. Therefore, like the employer/employee class action waiver at issue in *Ingle*, the present class action waiver operates exclusively to defendants' advantage. 328 F.3d at 1176. Moreover, the class action waiver falls within the definition of an unconscionable waiver under *Discover Bank*. Disputes between wireless service providers and their customers, like disputes between banks and their consumers at issue in *Discover Bank*, will typically involve small individual damages. Such is the case here. Plaintiff alleges that defendants included unauthorized charges on customers' billing statements, totaling approximately $9 per month per customer. Opp'n at 3. Recovery of such small damages cannot compensate for the costs—both in time and money—of arbitrating the claims individually. *See Discover Bank*, 36 Cal.4th at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Plaintiff also alleges that defendants have deliberately cheated large numbers of individual consumers out of small sums of money. *See id.*; FAC ¶ 1. Therefore, the circumstances required by *Discover Bank* are present here: the class action waiver "operate[s] effectively as [an] exculpatory contract clause" that functions to exempt defendants from responsibility for wrong-

doing.[10] *Discover Bank*, 36 Cal.4th at 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The class action waiver is thus "unconscionable under California law and should not be enforced." [11] *Id.* at 163, 30 Cal. Rptr.3d 76, 113 P.3d 1100.

Accordingly, because plaintiff has established, to a sufficient degree, that the arbitration clause in her AT & T Wireless Service Agreement is both procedurally and substantively unconscionable, the Court concludes that the provision is not enforceable against her.

### 3. Preemption

Finally, the Court finds defendant's preemption argument unavailing. *Ingle* explicitly rejected the notion that the FAA preempts " 'any otherwise applicable California judicial law finding class action waivers to be substantively unconscionable and invalid.' " 328 F.3d at 1176 (quoting the California Court of Appeals in *Discover Bank v. Superior Court of L.A. County*, 105 Cal.App.4th 326, 345, 129 Cal.Rptr.2d 393 (2003)). The *Ingle* court instead reasoned that, because arbitration agreements are still subject to general contract defenses under the FAA, and "because unconscionability is a generally applicable

---

10. The Court is unpersuaded that the result would be different under Cingular Wireless' arbitration provision. Cingular Wireless' commitment to pay the costs of arbitration and attorneys' fees under certain circumstances does not obviate the disincentive to pursue a small individual claim. Moreover, the Court notes that the California Supreme Court stated explicitly in *Discover Bank* that it was not persuaded "that the potential availability of attorneys' fees ... ameliorates the problem posed by such class action waivers." 36 Cal.4th at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100. While Cingular Wireless' arbitration provision obliges it to pay attorney's fees, that obligation is conditioned on the arbitrator *awarding the amount of the customer's demand or more*. Thus, attorneys' fees remain only potentially available. *See Laster*, 407

F.Supp.2d at 1190–1192 (construing *Discover Bank*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, and finding that the same Cingular Wireless provision at issue here is substantively unconscionable).

11. Finally, the Court notes *Tamayo v. Brainstorm*, 154 Fed.Appx. 564, 566 (9th Cir.2005), which although not published is persuasive. There, the Ninth Circuit, construing *Discover Bank*, reached the same conclusion, holding that a class-action waiver contained in defendant Prudential Bank's adhesive consumer contract functioned to exempt it from responsibility for the alleged wrongdoing, and was thus unconscionable under California law. *Tamayo*, 154 Fed.Appx. at 566.

defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement." *Id.* at 1170; *see also Laster,* 407 F.Supp.2d at 1192.[12]

Accordingly, the Court finds it appropriate to DENY defendants' motion to stay the action and compel arbitration.[13]

## III. CONCLUSION

For the foregoing reasons, defendants' motion to stay the action and to compel arbitration is hereby DENIED.

---

**12.** Defendants advance several policy arguments to the effect that California courts employ unconscionability law to impermissibly thwart arbitration agreements, thus failing to give due weight to the FAA's preemptive force. *See* Reply at 15–16. Defendants assert that *Discovery Bank* is merely an additional instance of this practice. *Id.* Defendants further advance several policy reasons as to why finding arbitration clauses unconscionable interferes with business practices. *Id.* at 16–17; Mot. at 21–24. However, these arguments ignore the fact that the Ninth Circuit, whose case law binds this Court, has held that the FAA does not preempt California's prohibition on unconscionable arbitration agreements. *See Ingle,* 328 F.3d at 1170.

**13.** The Court finally notes that a California appellate court, very recently construed the identical arbitration provision at issue here, and reached the same conclusion on similar grounds. *See Lee v. AT & T Wireless Servs., Inc.,* No. B186240, 2006 WL 1452936 (Cal.Ct. App. May 26, 2006).